FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

99 MAR 29 AH II: 15

U.S. DISTRICT COURT
N.D. OF ALABAMA

RONALD KELLY, et al.,                    )
                                         )
        Plaintiffs,                      )
                                         )
v.                                       )        CASE NO. CV 96-B-1047-S
                                         )
UHC MANAGEMENT COMPANY, INC.,            )
a Corporation, et al.,                   )
                                         )        ENTERED
        Defendants.                      )
                                                  MAR 2 9 1999

## MEMORANDUM OPINION

Currently before the court is the Motion for Summary Judgment on the Claims of Ronald

Kelly of defendants UHC Management Company, Inc., United HealthCare Corporation, and

United HealthCare South, Inc. (collectively referred to as "United"). The present action arises

out of claims by plaintiffs that defendants discriminated against them in violation of Title VII of

the Civil Rights Act of 1964, 42 U.S.C. §§2000e et seq. ("Title VII") and 42 U.S.C. § 1981

("Section 1981").[1] Ronald Kelly ("Kelly") alleges that he was discriminated against with respect

to promotions and salary, and that he was constructively discharged. Upon consideration of the

record, the submissions of the parties, the arguments of counsel, and the relevant law, the court is

of the opinion that defendants' motion is due to be granted.

---

[1]     This suit at one time involved sixteen plaintiffs including former employees, current
employees, and an applicant of United. The claims of twelve of the plaintiffs have been stayed
under the Federal Arbitration Act pursuant to this court's May 9, 1997, Order. *Kelly v. UHC
Management Company, Inc.*, 967 F. Supp. 1240 (N.D. Ala. 1997). In addition, the claims of
Darryl Tucker, Cecelia Bryant, and Tomeka Felder have been dismissed. This opinion addresses
only the claims of Ronald Kelly.

190

## I. FACTUAL SUMMARY

Kelly was hired by United's predecessor, Complete Health, on May 6, 1991, as a Scanner Operator. (Kelly Dep. at 78). He received three promotions during his tenure at United. In January of 1993, he was promoted to the position of Provider Service Telephone Operator. (*Id.* at 79-80). In September of 1993, he was promoted to a Multi-Line Customer Service Representative position. (*Id.* at 80). He was offered and accepted a promotion to an Electronic Claims Technician position on June 12, 1995. (*Id.* at 81). Kelly stated that he consistently received good work evaluations from his supervisors and numerous bi-weekly bonuses based on professionalism, accuracy, and effectiveness as an employee. (Kelly Aff. ¶ 3). On July 21, 1995, he resigned his employment with United to work at the Birmingham Fire Department. (Kelly Dep. at 15, 24, 341-344, 351). Kelly received an exit interview at the time of his resignation, which was conducted by Gerriann Fagan, United's Human Resources Manager. (*Id.* at 344). In response to the question, "Did your supervisor treat all employees fairly and equally?", Kelly responded "Yes." (Kelly Dep., Defs' Exh. 14). In response to the question, "Did you consider applying for another position within UHC?", Kelly responded "Yes." (*Id.*).

During his employment at United, Kelly applied for fifteen promotions that he did not receive. Only six of these promotion decisions are at issue. Kelly applied for a Technical Hardware Specialist position that was filled in June of 1995. (Kelly Dep. at 282; Musgrove Aff. ¶ 15). The qualifications for the Technical Hardware Specialist position included basic knowledge of PC hardware, data management, purchasing and inventory control experience. (Musgrove Aff. ¶ 13). At the time the Technical Hardware Specialist position became vacant, United was in the process of planning a move of its headquarters. (*Id.*). The move would require complete

2

dismantling of the network computer system and subsequent installation in the new offices. (*Id.*). Therefore, Musgrove stated that United considered it important that the person who filled the position have considerable experience in installing computers and not require a significant amount of training. (*Id.*).

Nancy Musgrove, the hiring supervisor, hired Scott Guthrie, a white male, for the position. (Musgrove Aff. ¶ 15). According to Nancy Musgrove, Guthrie had five years experience in installing computers and solving hardware and software problems, as well as inventory control experience and network wiring experience. (*Id.*). Musgrove stated in her affidavit that she believed he was the most qualified candidate for the position. (*Id.*). Musgrove also interviewed Kelly for the position. (Musgrove Aff. ¶ 14). She testified that she did not hire Kelly because he did not appear to have any work experience dealing with personal computer hardware, data hardware, data management, and purchasing and inventory control. (*Id.*).

Kelly applied for the Client Services Representative position on August 23, 1994. (Kimbrell Dep. at 64-65). The qualifications for the Client Services Representative position included two years of customer experience, excellent oral and written communication skills, and being "detail oriented". (Kimbrell Aff. ¶ 4, Exh. B attached thereto). Mike Kimbrell, the hiring supervisor, made the decision to hire Ruth Holton, a white female, in October of 1994. (Kimbrell Dep. at 73, 80). According to Kimbrell, during her interview, Ruth Holton exhibited excellent communication skills and appeared to be personable and enthusiastic, which were important characteristics for a Client Services Representative. (Kimbrell Aff. ¶ 9). On the "Interviewing Guide" filled out by Mike Kimbrell during his interview of Ruth Holton, Kimbrell rated Holton's communication skills as a "4" on a scale of 1 through 5, with 5 being excellent and 1 being poor.

3

Further, Kimbrell noted that Holton had "a lot of enthusiasm - 'bubbly'", "has a lot of personality", and "[c]lients will like her." (Kimbrell Dep., Pl.'s Exh. 6). Kimbrell also interviewed Kelly. (Kimbrell Aff. ¶ 10). According to Kimbrell, Kelly did not exhibit the oral communication skills required for the position and did not possess any enthusiasm for the position. (*Id.*). Kimbrell rated Kelly's communication skills as a "2" on the Interviewing Guide. (Kimbrell Dep., Pl.'s Exh. 5). Further, Kelly's letter to the "Personnel Department", which was attached to his application, contained several grammatical errors. (Kimbrell Aff., Exh. C attached thereto).

Kelly argues that Holton was not qualified for the position because she did not meet the two years customer service requirement for the position as stated in the posting for the position. (Kimbrell Dep. at 79-80; Pl.'s Exh. 2). However, Kimbrell testified that none of the applicants, including Kelly, met the two year customer service requirement. (Kimbrell Dep. at 120-123). In addition, Viki Renta, Human Resources Specialist, stated in her affidavit that the Human Resources Department performed the initial screening of the applicants for the Client Services Representative position to determine if the applicants met the minimum qualifications for the position. (Renta Aff. ¶4). The department's policy at that time was to present the hiring supervisor with the applicants that met the most minimum qualifications for the position when none of the applicants met all of the minimum qualifications. (*Id.*). Therefore, when Holton and Charlie Ray were selected for the position, he evaluated the applicants based on the other qualifications for the position. (Kimbrell Dep. at 120-23) .

Kelly applied for a promotion to the Multi Line Team Leader position in October of 1994. (Kelly Dep. at 269). One of the qualifications for the position was excellent oral and written

4

communication skills. (Jones Aff. ¶ 5). The responsibilities of the Team Leader position included dealing with irate and difficult customers and assisting customer services representatives with calls from customers. (*Id.*). Knowledge of how to handle all types of calls was a qualification for the position. (Jones Aff. ¶ 6).

Lori Jones, the Multi-Line Team Manager, testified in her affidavit that she selected David Nabors, a white employee, for the position because she considered him to possess the best oral and written communication skills of all the candidates. (Jones Aff. ¶¶ 7-8). According to Jones, he had knowledge of how to handle all types of calls in the department and, because of his knowledge, many customer services representatives asked him questions about how to handle certain calls. (*Id.*). Kelly received an interview for the position. (Jones Aff. ¶ 9). However, Jones stated that he did not believe that Kelly had the requisite oral and written communication skills required for the position. (*Id.*). In supervising him in the department, she believed that he often used a monotone voice and did not exhibit an acceptable level of confidence and energy level in dealing with customer phone calls. (*Id.*).

Kelly applied for the Adjustment Analyst position around July of 1994. (Kelly Dep. at 265). Janice Pride, the hiring supervisor, testified that in July of 1994, she selected Becky Wolfe, a white female, because she believed that Becky Wolfe possessed a thorough understanding of the claims processing system. (Pride Aff. ¶ 10). Ms. Pride stated in her affidavit that she did not select Kelly because he lacked the requisite knowledge of claims as related to the refund/adjustment procedure that was required for the position. (Pride Aff. ¶ 11).

Kelly applied for the Client Services Representative position in June of 1994. (Kimbrell Aff. ¶ 3). Mike Kimbrell, the hiring supervisor, testified that Charlie Ray was selected for the

5

position because, Charlie Ray exhibited excellent communication skills during his interview. (Kimbrell Aff. ¶ 5). Further, during his interview, Ray presented the results of a recent study he conducted on a pilot product that United had introduced in Georgia. (*Id.*). The study that Ray presented was very similar to the client satisfaction surveys that Client Services Representatives perform. (*Id.*). Kelly was not selected for the position because, according to Kimbrell, Kelly did not exhibit enthusiasm in general and spoke in a monotone voice with a low energy level. (Kimbrell Aff. ¶ 6). Kimbrell stated that Kelly was not selected because a Client Services Representative's responsibilities included speaking with large group customers, and Kelly did not possess the required qualifications for the position. (*Id.*).

Kelly presented evidence that Charlie Ray was not qualified to apply for the Client Services Representative position because he had not been employed for six months prior to the application closing date as required by the posting for the position. Charlie Ray was one week short of being employed for six months as of the application closing date. (Kimbrell Dep. at 108-112; Pl.'s Exh. 2). Viki Renta testified in her affidavit that the human resources policy at that time was to allow employees to apply if they were very close to meeting the six month requirement. (Renta Aff. ¶ 5). In addition, Kimbrell testified that the Human Resources Department made the initial determination of who was eligible to apply, and that he was unaware that there was a question as to whether Charlie Ray met the six month requirement. (Kimbrell Dep. at 110-11).

Kelly applied for the Help Desk Operator position in February of 1994. (Kelly Dep. at 250). The Help Desk takes phone calls from personal computer and main frame users at United. (Musgrove Aff. ¶ 8). The position requires experience in working with computers including

6

software, telecommunications, and some computer hardware. (*Id.*). Nancy Musgrove made the decision to promote Jeannie Chapple, a white female, to the position on April 11, 1994. (Musgrove Aff. ¶ 7). At the time of her application, Jeannie Chapple was working in a Management of Information Systems department at a cable company. (Musgrove Aff. ¶ 9). She had experience in computer trouble-shooting, computer set-up, equipment problems, data base clean-up and other computer-related problems. (*Id.*). Musgrove stated that she considered this work experience to be the type of experience required for the Help Desk position and considered Jeannie Chapple to be the most qualified applicant. (*Id.*). Musgrove testified that Kelly did not have any hands-on computer work experience in trouble-shooting and other computer related problems. (Musgrove Aff. ¶ 10).

On May 25, 1995, Kelly filed a charge of discrimination with the Equal Employment Opportunity Commission against Complete Health Insurance Company alleging race discrimination in the selection of the position of Quality Assurance Auditor position. (Defs' Exh. 5). On April 24, 1996, Kelly filed his initial complaint alleging violations of Title VII and Section 1981.[2]

## II. SUMMARY JUDGMENT STANDARD

Under FED. R. CIV. P. 56(c), summary judgment is proper if the pleadings and evidence indicate that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment bears the initial burden of showing that no genuine issues exist. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H.*

---

[2]    Amended complaints were filed adding additional plaintiffs and class allegations.

*Kress & Co.*, 398 U.S. 144, 157 (1970). Once the moving party has met his burden, Rule 56(e)
requires the nonmoving party to go beyond the pleadings and show that there is a genuine issue
for trial. *See Celotex*, 477 U.S. at 324. A dispute is genuine "if the evidence is such that a
reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242, 248 (1986).

In deciding a motion for summary judgement, the judge's function is not to "weigh the
evidence and determine the truth of the matter but to determine whether there is a genuine issue
for trial." *Id.* at 249. Credibility determinations, the weighing of evidence, and the drawing of
inferences from the facts are left to the jury, and therefore the evidence of the non-movant is to be
believed and all justifiable inferences are to be drawn in his favor. *See id.* at 255. Nevertheless,
the non-movant need not be given the benefit of every inference but only of every *reasonable*
inference. *See Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## III. DISCUSSION

Title VII prohibits an employer from discriminating "against any individual with respect to
his compensation, terms, conditions, or privileges of employment, because of such individual's
race, color, religion, sex, or national origin ...." 42 U.S.C. § 2000e-2(a)(1). A plaintiff must file
an EEOC charge within 180 days of the alleged discriminatory event in order to maintain a Title
VII action. 42 U.S.C. § 2000e-5(e); *Hill v. Metropolitan Atlanta Rapid Transit Auth.*, 841 F.2d
1533, 1545 (11th Cir.), *modified*, 848 F.2d 1522 (11th Cir. 1988); *Larkin v. Pullman-Standard
Division*, 854 F.2d 1549, 1561-1562 (11th Cir. 1988) ("In addition to operating as a statute of
limitations, [the 180 day] requirement has been interpreted to shield a Title VII defendant from

8

damages for any like conduct he may have engaged in prior to 180 days before the filing of a charge."). Kelly filed his EEOC charge on May 25, 1995. (Kelly Dep., Defs' Exh. 5). Absent any evidence of a continuing violation, promotions occurring more than 180 days prior to May 25, 1995, or November 28, 1994, cannot be the subject of a Title VII action. With the exception of the Technical Hardware position filled in June, 1995, all of Kelly's Title VII promotion claims are time-barred.[3]

Kelly's Title VII action is limited to the scope of his EEOC charge and a reasonable investigation by the EEOC thereof. See *Mulhall v. Advance Security, Inc.*, 19 F.3d 586, 589 n.8 (11th Cir. 1994) ("A plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination."). Kelly's EEOC charge alleges race discrimination only in the selection of the position of the Quality Assurance Auditor position, a claim which Kelly now concedes is due to be dismissed. (Kelly Dep., Defs' Exh. 5; Pl.'s Resp. in Opp'n to Mot. for Summ. J. at 8 n.1). Kelly's charge contains no allegations relating to other positions or claims. The EEOC Investigator's letter to Kelly dismissing the charge on the basis that he was unable to conclude that a violation of Title VII occurred addressed only the Quality Assurance Auditor position. (Kelly Dep., Defs' Exh. 8). The investigation of Kelly's charge was reasonably limited to the Quality Assurance Auditor position. Therefore, Kelly's claims of race discrimination cannot be maintained under Title VII.[4]

Even if Kelly's claims were not barred by Title VII's 180-day limitation and were not outside the scope of his EEOC charge, his Title VII claims must be dismissed for the same

---

[3]   At oral argument, Kelly's attorney conceded this point.

[4]   At oral argument, Kelly's attorney conceded this point.

reasons his Section 1981 claims cannot survive summary judgment, as discussed below.

Section 1981 prohibits race discrimination in the making and enforcement of contracts. 42 U.S.C. § 1981(a). For reasons stated below, summary judgment is appropriate with respect to Kelly's Section 1981 claims.

A plaintiff alleging illegal discrimination under Title VII[5] may establish a genuine dispute as to his claim in three ways: 1) by presenting direct evidence of discriminatory intent, *see Carter v. Three Springs Residential Treatment,* 132 F.3d 635, 641 (11th Cir. 1998) (direct evidence defined as "evidence, which if believed, proves existence of fact in issue without inference or presumption"); 2) by meeting the three-step test set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973); or 3) by demonstrating through statistics a pattern of discrimination, *see Carter,* 132 F.3d at 642 n.5 (citing *Carmichael v. Birmingham Saw Works,* 738 F.2d 1126, 1131 (11th Cir. 1984)).

Since plaintiff presents no direct or statistical evidence of discrimination, he must rely on the *McDonnell Douglas* burden shifting analysis. Under the *McDonnell Douglas* framework, the plaintiff first "must establish a prima facie case of discrimination. The employer then must respond with a legitimate, nondiscriminatory reason for its actions. In order to prevail, the plaintiff must establish that the employer's articulated legitimate, nondiscriminatory reason was a pretext to mask unlawful discrimination." *Turlington v. Atlanta Gas Light Co.,* 135 F.3d 1428, 1432 (11th Cir. 1998), (citing *Walker v. NationsBank of Fla. N.A.* 53 F.3d 1548, 1556 (11th Cir. 1995)). Despite the burden shifts in the *McDonnell Douglas* test, "the ultimate burden of

---

[5]In considering claims under Section 1981, the court employs the same burden shifting analysis used for Title VII claims. *See Brown v. American Honda Motor Co., Inc.,* 939 F.2d 946 (11th Cir. 1991), *cert. denied,* 502 U.S. 1058 (1992).

10

persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981); *accord Evans v. McClain of Georgia, Inc.*, 131 F.3d 957, 963 (11th Cir. 1997).

## A. Promotion Claims

In order to demonstrate a prima facie case for discriminatory failure to promote, a plaintiff must show that 1) he is a member of a protected class; 2) he was qualified for and applied for the promotion; 3) he was rejected in spite of his qualifications; and 4) the individual who received the promotion is not in a protected group and had lesser or equal qualifications. *Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 642 (11th Cir. 1998).

Kelly initially claimed that he had been discriminated with respect to all fifteen promotions that he applied for and did not receive during his employment at United. (Kelly Dep. at 226-227). Kelly conceded that nine of the promotion claims could not be maintained because they were either time-barred under Title VII and Section 1981 or a black employee received the promotion.[6]

### 1. Technical Hardware Specialist position

Kelly has not met his initial burden of establishing a prima facie case with respect to the Technical Hardware Specialist position filled by Scott Guthrie. The qualifications for the Technical Hardware Specialist position included basic knowledge of PC hardware, data management, purchasing and inventory control experience. At the time the Technical Hardware Specialist position became vacant, United was in the process of planning a move of its

_____

[6] The claims which plaintiff concedes are time-barred include: COB Research Coordinator; Pharmacy Customer Service Representative; Claims Customer Service Coordinator; I-MAX Technical Operator; Pharmacy Representative; and Inventory Control Clerk. The other positions awarded to African-Americans are: Systems Operator; Quality Assurance Operator; Medicare Retention Specialist. (Pl.'s Resp. in Opp'n to Mot. for Summ. J. at 8 n.1).

11

headquarters. The move would require complete dismantling of the network computer system and subsequent installation in the new offices. Therefore, United considered it important that the person who filled the position have considerable experience in installing computers and not require a significant amount of training. Guthrie had five years experience in installing computers and solving hardware and software problems, as well as inventory control experience and network wiring experience. Conversely, Kelly's resume and application did not indicate that he had any experience in the installation of computers, knowledge of PC hardware, data management, or inventory control experience. Thus, because plaintiff did not meet his initial burden of establishing that he had equal or greater qualifications for the position than did Guthrie, plaintiff has failed to establish a prima facie case for race discrimination in the selection of Guthrie for the Technical Hardware Specialist position.

Even assuming that plaintiff met his initial burden of establishing a prima facie case of race discrimination, plaintiff's claim would still fail. Defendants have articulated legitimate nondiscriminatory reasons for the decision to promote Guthrie. Nancy Musgrove, the hiring supervisor, testified that Scott Guthrie was selected because "he had work experience as a purchasing agent responsible for the purchase of all hardware and software at AmSouth Mortgage. He had four or five years of experience in installing PC's and solving hardware and software problems. He further had inventory control experience and network wiring experience." (Musgrove Aff. ¶ 15). Musgrove stated that Kelly's resume and application do not indicate that he has any experience in installation of computers, knowledge of PC hardware, and other qualifications required for the position.

12

As evidence of pretext, Kelly argues that he has consistently received good work evaluations from his supervisors and numerous bi-weekly bonuses based on professionalism, accuracy, and effectiveness as an employee. In addition, Kelly states in his brief that "Musgrove had a problem working with black employees." Yet, plaintiff presented no evidence to support this assertion. Kelly's arguments of pretext coupled with all the evidence in the record could not cause a reasonable jury to conclude that defendants' proffered reasons for the decision were a pretext for illegal discrimination based on race. Thus, summary judgment on plaintiff's claim that defendants discriminated against him in failing to promote him to the Technical Hardware Specialist position is due to be granted.

## 2. Client Services Representative positions

Kelly was twice denied a promotion to the position of Client Services Representative. It is assumed, and defendants have not argued otherwise, that Kelly has met his initial burden of establishing a prima facie case with respect to the Client Services Representative positions filled by Charlie Ray and Ruth Holton.

### a. October 1994 promotion

Mike Kimbrell testified that he selected Ruth Holton in October of 1994, because she displayed excellent communication skills, enthusiasm for the position, and a "lot of personality," which he concluded were important qualifications for the position. Kimbrell stated that he did not select Kelly because Kelly did not appear to possess the excellent communication skills required for the position. For example, Kimbrell alleged that Kelly spoke in a monotone voice, his letter to the Personnel Department contained grammatical errors, and he did not appear to have any

13

enthusiasm for the position.

Kelly argues that Holton was not qualified for the position because she did not meet the two years customer service requirement for the position as stated in the posting for the position. However, Kimbrell testified that none of the applicants, including Kelly, met the two year customer service requirement. In addition, Viki Renta, Human Resources Specialist, stated in her affidavit that the Human Resources Department performed the initial screening of the applicants for the Client Services Representative position to determine if the applicants met the minimum qualifications for the position. The department's policy at that time was to present the hiring supervisor with the applicants that met the most minimum qualifications for the position when none of the applicants met all of the minimum qualifications. Therefore, when Holton and Ray were selected for the Client Services Representative positions, Kimbrell evaluated the applicants based on the other qualifications for the position.

As further evidence of pretext, Kelly states that he received numerous bonuses during his employment based on his effective communication skills and his ability to professionally, accurately, and effectively communicate with customers. However, Kelly's arguments of pretext coupled with all the evidence in the record could not cause a reasonable jury to conclude that defendants' proffered reasons for the decision to promote Holton instead of plaintiff were a pretext for illegal discrimination based on the plaintiff's race. Thus, summary judgment on plaintiff's claim that defendants discriminated against him on the basis of his race when plaintiff was not promoted to the Client Services Representative position in October of 1994 is due to be granted.

14

## b. July 1994 promotion

Kimbrell stated that he selected Charlie Ray for the Client Services position in July of 1994, because Charlie Ray exhibited excellent communication skills and had presented a study on a pilot product during his interview. Kelly was allegedly not selected because Kimbrell was not impressed by his monotone voice and lack of enthusiasm.

Kelly presented evidence that Charlie Ray was not qualified to apply for the Client Services Representative position because he had not been employed for six months prior to the application closing date as required by the posting for the position. Charlie Ray was one week short of being employed for six months as of the application closing date. Viki Renta testified in her affidavit that the human resources policy at that time was to allow employees to apply if they were very close to meeting the six month requirement. In addition, Kimbrell testified that the Human Resources Department made the initial determination of who was eligible to apply, and that he was unaware that there was a question as to whether Charlie Ray met the six month requirement. Accordingly, even assuming that Charlie Ray should not have been allowed to apply because he did not meet the six month previous employment requirement, it is not evidence of pretext because Kimbrell was not aware of any alleged error in allowing Charlie Ray to apply for the position. *See Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1187 (11th Cir. 1984) (an employment decision based on erroneous or mistaken facts does not constitute discrimination); *accord Elrod v. Sears, Roebuck and Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991); *Smith v. Papp Clinic, P.A.*, 808 F.2d 1449, 1452-53 (11th Cir. 1987).

As further evidence of pretext, Kelly states that he received numerous bonuses during his employment based on his effective communication skills and his ability to professionally,

15

accurately, and effectively communicate with customers. However, Kelly's arguments of pretext coupled with all the evidence in the record could not cause a reasonable jury to conclude that defendants' proffered reasons for the decision to promote Ray instead of plaintiff were a pretext for illegal discrimination based on the plaintiff's race. Thus, summary judgment on plaintiff's claim that defendants discriminated against him on the basis of his race when plaintiff was not promoted to the Client Services Representative position in July of 1994 is due to be granted.

### 3. Multi-Line Team Leader position

Kelly testified during his deposition that he believed he had been denied the Multi-Line Team Leader position because of his race. (Kelly Dep. at 270-273). Assuming Kelly has met his initial burden of establishing a prima facie case with respect to the Multi-Line Team Leader position filled by David Nabors, defendants have asserted legitimate nondiscriminatory reasons for that decision. Lori Jones, who supervised both David Nabors and Kelly, stated that Nabors had the most knowledge of how to handle all types of calls in the department and had the best communication skills. She concluded that Kelly spoke in a monotone voice and did not exhibit an acceptable level of confidence and energy level required for the position.

As evidence of pretext, Kelly presented numerous Member/Provider Service Quality Monitor forms for years 1993 through 1995, which Kelly argues constitutes evidence that he possessed the oral and written communication skills required for several of the promotions that he was denied.[7] While these documents may be evidence that Kelly appropriately handled calls while

---

[7] United filed a motion to strike this portion of Kelly's evidentiary submission based on Kelly's failure to authenticate the documents through affidavits or other sworn testimony. Even considering this evidence, the court is of the opinion that defendants' Motion for Summary Judgment is due to be granted. Therefore, the court will deny defendants' Motion to Strike.

16

he was employed in the Customer Service Department, the documents do not constitute evidence that the decision makers' articulated reasons are pretext for illegal race discrimination. Absent evidence that these documents were reviewed by or presented to the decision-makers, they have no relevance to Kelly's claims.

Kelly states in his affidavit that his positions as a Provider Service Representative and a Multi-Line Customer Service Representative required good communication skills, that he received cash awards for his service, and he received appreciative letters from customers for his assistance. Kelly's perception of his own abilities and even customers' perception of his abilities is irrelevant to the issue of pretext. The decision-maker's perception of Kelly is the only relevant issue. *See Weihaupt v. American Med. Ass'n*, 874 F.2d 419, 428 (7th Cir. 1989) ("[The employee's] perception of himself . . . is not relevant. It is the perception of the decision maker which is relevant.").

Kelly argues that he did not receive several promotions because the hiring supervisors had a stereotypical view that Kelly could not communicate as well as the white applicants. Kelly's assertion that several different decision-makers denied him promotions based on an alleged stereotype is not supported by any evidence. Further, United presented evidence that black decision-makers also concluded that Kelly did not exhibit sufficient communication skills and professionalism during his interviews. Tunja Sanders, a named plaintiff and black supervisor, selected another applicant for the Quality Assurance Auditor position because in her opinion, Kelly did not "display communication skills as strong as [the successful applicant's] during the interview." (Sanders Dep. at 359, Defs' Exh. 11). Further, Anthony Williams, a black supervisor, concluded that Kelly did not display a professional dress during his interview for the

17

Systems Operator position because Kelly's sleeves were rolled up and his tie was loosened. (Williams, Dep. at 47-48, Pl.'s Exh. 3).

In addition, the communication skills possessed by the successful applicants is only one of several reasons offered by United for its decisions. Kelly has presented no evidence that the other reasons offered are a pretext for discrimination. *See Combs v. Plantation Patterns*, 106 F.3d 1519, 1532 (11th Cir. 1997), *cert. denied*, 118 S.Ct. 685 (1998) (A plaintiff can avoid summary judgment by establishing a prima facie case and producing evidence sufficient to discredit each and every legitimate, nondiscriminatory reason offered by the defendant).

Kelly's arguments of pretext coupled with all the evidence in the record could not cause a reasonable jury to conclude that defendants' proffered reasons for the decision to promote Nabors instead of plaintiff were a pretext for illegal discrimination based on the plaintiff's race. Thus, summary judgment on plaintiff's claim that he was discriminated against on the basis of his race when he was not promoted to the Multi-Line Team Leader position is due to be granted.

#### 4. Adjustment Analyst position

Kelly alleges that he was not promoted to the position of Adjustment Analyst because of his race. However, Kelly has not established a prima facie case of race discrimination. One of the main qualifications for the Adjustment Analyst position was a thorough understanding of the claims processing system. Defendants demonstrated that Wolfe possessed the requisite knowledge of the claims processing system as required for the position. In contrast, Kelly has produced no evidence suggesting he possessed similar qualifications. Therefore, because plaintiff has not demonstrated that he was equally or more qualified for the position than the individual who received the promotion, he has not demonstrated a prima facie case of race discrimination

with respect to the Adjustment Analyst position awarded to Becky Wolfe.

Even assuming that plaintiff did met his initial burden of establishing a prima facie of race discrimination, the claim would still fail. Defendants have articulated a legitimate, nondiscriminatory reason for the promotion decision. Janice Pride, the former COB Coordinator, selected Wolfe for promotion. Pride testified that Wolfe was the most qualified person for the job because she "possessed a thorough understanding of the claims processing system that was required for the position." (Pride Aff. ¶ 10). Pride also testified that Kelly lacked knowledge of claims as related to the refund/adjustment procedure that was required for the position.

As evidence of pretext, Kelly argues that he has consistently received good work evaluations from his supervisors and numerous bi-weekly bonuses based on professionalism accuracy, and effectiveness as an employee. However, Kelly's arguments of pretext coupled with all the evidence in the record could not cause a reasonable jury to conclude that defendants' proffered reasons for the decision to promote Wolfe instead of plaintiff were a pretext for illegal race discrimination. Thus, summary judgment on plaintiff's claim that defendants discriminated against him on the basis of his race when he was not promoted to the Adjustment Analyst position is due to be granted.

### 5. Help Desk Operator position

Kelly alleges that he was not promoted to the position of Help Desk Operator because of his race. The qualifications required for this position included basic knowledge of PC hardware, data management, purchasing and inventory control experience, and Novell experience. Defendants demonstrated that Jeannie Chapple, the person selected for the position, had experience in computer trouble shooting, computer set-up, equipment problems, data base clean-

19

up, and other computer problems. In contrast, plaintiff did not demonstrate that he had any of the aforementioned qualifications. Therefore, because plaintiff has not met his initial burden of demonstrating that he was equally or more qualified for the position than the individual who received the promotion, he has not demonstrated a prima facie case of race discrimination with respect to the Help Desk Operator position filed by Jeannie Chapple.

Even assuming that plaintiff did met his initial burden of establishing a prima facie case of race discrimination, his claim would still fail. United has asserted legitimate, nondiscriminatory reasons for the decision. The qualifications required for this position included basic knowledge of PC hardware, data management, purchasing and inventory control experience, and Novell experience. Musgrove, the Service and Support Coordinator, stated that she selected Chapple because Chapple had experience in computer trouble shooting, computer set-up, equipment problems, data base clean-up, and other computer problems which Musgrove considered to be valuable and similar to the type experience required for the Help Desk. Musgrove testified that Kelly had no experience in trouble-shooting or other computer related problems and was employed at the time at a position which did not involve working with computers.

As evidence of pretext, Kelly argues that he has consistently received good work evaluations from his supervisors and numerous bi-weekly bonuses based on professionalism, accuracy, and effectiveness as an employee. In addition, Kelly states in his brief that "Musgrove had a problem working with black employees." Yet, plaintiff presented no evidence to support this assertion. Kelly's arguments of pretext coupled with all the evidence in the record could not cause a reasonable jury to conclude that defendants' proffered reasons for the decision to select Chapple instead of plaintiff were a pretext for illegal race discrimination. Thus, summary

20

judgment on plaintiff's claim that defendants discriminated against him on the basis of his race when he was not selected for the Help Desk Operator position is due to be granted.

## B. Constructive Discharge Claim

Kelly's initial complaint alleges that he was constructively discharged from United as a result of his race. In order to establish that he was constructively discharged, plaintiff must prove that working conditions were so intolerable that a reasonable person in the employee's shoes would have felt compelled to resign. *Kilgore v. Thompson & Brock Management, Inc.,* 93 F.3d 752, 754 (11th Cir. 1996); *Hill v. Winn-Dixie Stores, Inc.*, 934 F.2d 1518, 1527 (11th Cir. 1991).

Plaintiff's claim that he was constructively discharged rests on his allegation that he was discriminated against based on his race. Specifically, plaintiff claims that he was denied numerous promotions because he is African-American. However, Kelly testified in his deposition that he voluntarily left employment with United to seek a position with the Birmingham Fire Department. (Kelly Dep. at 343-344, 351). Such testimony is consistent with his exit interview form, which indicates that he considered applying for another position at United and that the reason for his separation from United was to "Change careers/return to school." (Defs' Exh. 14). Even assuming all of plaintiff's allegations are true, as a matter of law, the working conditions were not so intolerable that a reasonable person in plaintiff's shoes would have felt compelled to resign. No reasonable fact finder could find that plaintiff was constructively discharged. Thus, summary judgment on plaintiff's constructive discharge claim is due to be granted.

## C. Salary Claim

In his complaint, Kelly alleged that defendants discriminated against him in the compensation he received for his work on the basis of race. Kelly claims that while he held the

21

position of Electronic Claims Processor he received a 3% pay increase when his understanding of
company practice was that he was due a 5% pay increase. (Kelly Aff. ¶ 5). In order to establish a
prima facie case of race discrimination based on salary disparity, Kelly must prove that (1) he is
member of a protected minority; and (2) he occupied a position similar to non-minority employees
who were compensated at a higher rate than Kelly. *Miranda v. B & B Cash Grocery Store, Inc.*,
975 F.2d 1518, 1528 (11th Cir. 1992). Kelly has presented no evidence that he was compensated
differently than similarly situated white employees who performed the same duties as him.
Accordingly, he has failed to establish a prima facie case of race discrimination based on salary
disparity. Thus, summary judgment is due to be granted on plaintiff's claim of salary disparity
based on race.

## IV. CONCLUSION

Drawing all reasonable inferences in favor of the plaintiff, Kelly's evidence has failed to
raise a genuine issue of material fact regarding any of his claims of race discrimination and
defendants are entitled to judgment as a matter of law. Accordingly, defendants' Motion for
Summary Judgment on the Claims of Ronald Kelly is due to be granted. All of Kelly's claims
against the United defendants will be dismissed with prejudice. An order in accordance with this
opinion will be entered contemporaneously herewith.

**DONE** this 29 day of March, 1999.

Sharon Lovelace Blackburn

**SHARON LOVELACE BLACKBURN**
United States District Judge

22